THE TURNER & SEYMOUR MANUFACTURING COMPANY *v.* THE TORRINGTON FOUNDRY WORKERS LOCAL No. 1699, UNITED AUTOMOBILE, AIRCRAFT, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O. ET AL.

COURT OF COMMON PLEAS    LITCHFIELD COUNTY    FILE No. 9263

Memorandum filed June 4, 1952.

*Greene* and *Cook,* of Torrington and *Maguire & Walker,* of Stamford, for the Plaintiff.

*Margaret Driscoll,* of Bridgeport, for the Defendants.

DEVLIN, J. The plaintiff in this action is seeking a temporary injunction to restrain the defendants from carrying on certain alleged illegal picketing. The case involves a labor dispute within the meaning of General Statutes § 7408. Defendants contend that under our law the court is powerless to restrain picketing so long as there is no evidence of violence and the picketing is peaceful.

Under General Statutes, § 7409, injunctive relief is restricted, in so far as it applies to this particular case, from preventing a person or persons (d) by all *lawful* means aiding any person participating or interested in any labor dispute; (e) giving publicity

to the existence of all the facts involved in any labor dispute, whether by advertising, speaking or patrolling, or by any other *lawful* method; (f) assembling peaceably to act or to organize to act in the promotion of their interests in a labor dispute; (i) advising or urging, or otherwise causing or inducing, by any *lawful* method the acts hereinbefore specified.

The question now is whether the actions and conduct of the defendants amounted to peaceful picketing or was unlawful conduct.

In the furtherance of a lawful strike the strikers may use peaceful persuasion to induce other workmen to join them in the strike. Restatement, 4 Torts § 779, comment f, has tabulated some of the several functions performed by picketing in the following language: "Pickets stationed at the place of business involved in the dispute may observe it to see the extent of operations and the persons who come there for business. They may also, by word of mouth, or signs or placards, seek to dissuade workers and others from entering the plant for purposes of business or from otherwise doing business with the employer. Their mere presence at the plant may be sufficient notice to persons interested that the plant is involved in a labor dispute. Picketing may also be a means of maintaining the morale of the workers involved in the dispute, and of exhibiting to others their unity and determination. Rumors that the workers' morale is weakening, that their ranks are suffering serious defections, and that the strike is being abandoned in favor of a return to work may bring defeat to the workers' cause and are sometimes circulated for that very purpose. Picketing may dispel such rumors."

The term "peaceful picketing" implies not only the absence of violence but the absence of any unlawful act. It authorizes picketing which does not interfere with the person or property of another by

the unlawful use of force, violence, intimidation or threats. It precludes any form of physical obstruction or interference with an employer's business or the misrepresentation of the facts of the controversy, and should not go beyond the area of peaceful persuasion.

The boundary between lawful and unlawful conduct is that between peaceful persuasion and intimidation. The claim of the defendants that intimidation or coercion cannot be found to exist in the absence of actual physical violence or express threats of physical injury to person or property is not well founded and is not in accord with our law.

In *Levy & Devaney, Inc.* v. *International Pocketbook Workers Union,* 114 Conn. 319, groups of strikers, varying from six to twenty in number, gathered about the plant, and as the employees were going to and from work they received black and threatening looks from them; some were followed to and from work and others required a police escort; even though no physical violence was used, this court in the following language (p. 322) held that the conduct of the defendants was such as to constitute intimidation and coercion: "To intimidate is to inspire with fear, to overawe or make afraid. Fear may be inspired without physical violence or spoken threats, moral intimidation may be accomplished by a menacing attitude and a display of force which may coerce the will as effectually as actual physical violence. The gathering of strikers in considerable numbers at the entrance of a factory with threatening attitude toward employees, who must run the gauntlet of a hostile picket line in going to and from work, may overawe and make them afraid by a show of force which itself is intimidating. The well considered authorities all hold that the conduct of a strike may be such as to constitute intimidation though there is no use of force or physical violence."

The legality of picketing in each case depends upon its purpose and the conduct of the pickets. Picketing becomes unlawful if it goes beyond the allowable area of peaceful persuasion and assumes the form of intimidation, threats or violence, impedes traffic to a place of business, or interferes with the free use of property. As to the number of pickets who may be employed in any particular picket line, there is no rule fixing the number at a definite figure. Each case must be judged upon its own particular set of facts. Restatement, 4 Torts § 779, comment h, summarizes the problem in the following language: "The question is in each case whether the number of pickets plus the attendant circumstances are such that fear of physical harm rather than persuasion is the force loosed upon the persons sought to be influenced. Thus it is important to consider the kind of place picketed and the character of persons sought to be influenced, that is, for example, whether the place picketed is a foundry approached only by men or a department store patronized chiefly by women. It is important also to consider the character of the pickets, whether they are, for example, shy women or rough men. And it is important to consider the conduct of the pickets: whether they behave in a quiet, orderly manner or are boisterous and equipped with weapons of physical harm; whether they obstruct access to the place picketed so as to make ingress or egress difficult or do not interfere with it at all. Other factors may also be important, as, for example, the presence or absence of private guards or public police and the extent of protection afforded by them. In some circumstances, then, picketing may be a form of peaceful persuasion, though the number of pickets is large; in others, the picketing may not be fair persuasion though the number is small."

There was evidence submitted that the number of pickets employed varied from 9 to 125; that they congregated at both gates but principally at the main

gate on Lawton Street; that this street is about 24 feet wide with walks 6-7 feet wide; that sometimes they walked in three circles one within the other; that cars were held up on entering, on one occasion 9 minutes being consumed in letting 6 cars in and on another occasion 10 minutes for 8 cars; that large numbers of pickets at times walked elbow length apart; that workers were spit at as they went through in cars; that personal threats of violence were made against some workers and officers if they would come out from behind the company gate; that obscene language was used; that ingress and egress for cars was delayed by strikers reading or tying a shoe directly in its path; that wilful damage was done to the automobile of one worker for which the representative of the union paid the damages secured in a judgment; and that several arrests were made by police authorities for obscene language, tampering with a motor vehicle, and for improper use of the highway.

The strike was called on January 16, 1952, and still continues. Originally the picketing was done by former employees of the plant but on April 21 there were 125, 92 of whom were from other union plants in the general area.

In entering or leaving the plant there was no evidence of physical violence by any of the pickets against the employees, but there is not much doubt that it would have resulted if those having a lawful right to enter had attempted to pass through at the time of the mass or circular picketing.

Interference with a free right of ingress and egress to and from a plant by those who had such a right is unlawful. *American Steel Foundries* v. *Tri-City Central Trades Council*, 257 U. S. 184. Mass and circular picketing is in the same category. *Goldfinger* v. *Feintuch*, 276 N. Y. 281, 286, 116 ALR 477.

Likewise, the gathering of strikers in considerable numbers at the entrance of the factory with a threatening attitude towards employees who must run the gauntlet of a hostile picket line in going to and from work may overawe and make them afraid with a show of force which in itself is intimidating. *Levy & Devaney, Inc.* v. *International Pocketbook Workers Union, supra.*

In the present case, the conduct of the pickets in interfering with those having business with the plaintiff from entering the plant, in picketing in close formation and within circles, and in using offensive language or gestures amounting to intimidation exceeded the bounds of peaceful picketing, and such action was not "lawful" conduct within the meaning of the term in the statute. It is also found that the above related acts and those of a similar nature are likely to be continued unless restrained.

All of the named defendants were at the plant on occasions while the picketing was going on and at times actively participated in it.

It is the claim of defendants that there is no showing of substantial and irreparable injury to the plaintiff and that it has an adequate remedy at law. It apears, however, that defense orders have been canceled due to the inability to meet requirements of delivery, patterns of customers have been given back, and plaintiff has been required to give technical assistance to other foundries forced to take over its work.

Whether damages are "irreparable" or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered. *Robertson* v. *Lewie,* 77 Conn. 345, 346. The business of the plaintiff and its conduct thereof are property rights. *Knapp-Monarch Co.* v. *Anderson,* 7 F. Sup. 332.

This includes the right to have its employees enter and leave the plant unmolested. *Isolantite, Inc.* v. *United Electrical, Radio & Machine Workers,* 130 N. J. Eq. 506. Such an inference works an irreparable injury for which there exists no certain pecuniary standard for the measurement of the damage and the injunction remedy is recognized. *Phelps Dodge Copper Products Corporation* v. *United Electrical Radio & Machine Workers,* 138 N. J. Eq. 3.

The plaintiff recognizes the right of the defendants to picket and seeks to restrain only such acts as are not within the category of peaceful picketing. The relief requested is simply the restraining of illegal activity. If such relief is not granted, irreparable injury to the business of the plaintiff will follow. On the other hand, if such limited relief is granted there will be no interference with the legal rights of the defendants. As to where the "greater injury would be inflicted," the doctrine of balancing the conveniences applies.

In dealing with this problem the court in *Isolantite, Inc.* v. *United Electrical Radio & Machine Workers,* supra, 514, had the following to say: "Let us look at the statutory provision literally. How much injury will be inflicted upon the defendants by forbidding them from insulting, threatening or assaulting the employees? Surely this is a strange inquiry in a court of justice. It may be answered that when defendants are enjoined from committing tortious acts, any loss sustained by them is *damnum absque injuria,* and that any injury which would fall upon complainants from a denial of the injunction, would be the greater injury. The strike leaders testifying in this case, said that the injunction had had a dispiriting effect on their followers; that many were discouraged and that the strike would probably be lost if the injunction was continued. Let us suppose that thereby the C. I. O. union would lose a

large sum in dues. I am quite satisfied that the legislature cannot deprive complainants of the appropriate remedy because tort feasors would thereby suffer."

The following facts are found: (a) Unlawful acts have been threatened and will be committed by the defendants unless restrained, and the defendants have authorized or ratified them. (b) Substantial and irreparable injury to the plaintiff or its property will follow. (c) Greater injury will be inflicted upon the plaintiff by the denial of relief than would be inflicted upon the defendants by the granting thereof. (d) The plaintiff has no adequate remedy at law.

Upon the filing of a satisfactory undertaking in the amount of $10,000 to answer all damages in case the plaintiff shall fail to prosecute the action to effect, a temporary injunction will issue.

## TEMPORARY INJUNCTION

This complaint and application for a temporary injunction, dated April 24, 1952, came before the court on April 29, 1952. At this time counsel appeared for all parties and the matter was fully heard in open court on this day and on the first and second days of May, 1952. It appearing to the undersigned that a temporary injunction ought to issue, the plaintiff having filed an undertaking with satisfactory surety in the sum of $10,000 to answer all damages in case the plaintiff shall fail to prosecute said action to effect.

These are therefore by authority of the state of Connecticut to command and enjoin you—The Torrington Foundry Workers Local No. 1699, United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O.; William T. Moriarty, individually and as international representative of United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O.; John J. Driscoll,

individually and as international representative of United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O.; Mitchell Sviridoff, individually and as assistant regional director of United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O.; Thomas J. Cooke, individually and as international representative of United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O.; and all members of The Torrington Foundry Workers Local No. 1699, United Automobile, Aircraft, Agricultural Implement Workers of America, C.I.O., who are or, have heretofore been employed at said Turner & Seymour Manufacturing Company, and all other persons acting in concert with or otherwise participating with them or acting in their aid and behalf—under penalty of $5000, to wholly and absolutely desist and refrain from (a) congregating and engaging in mass picketing, circular picketing, and picketing shoulder to shoulder or otherwise in close formation upon the sidewalks and roadways, near and around the entrances to plaintiff's place of business in the city of Torrington, in such a way as to block said entrances and prevent, interfere with or impede entrance into or egress from said premises by plaintiff's officers and employees and members of the public; (b) preventing or interfering by force, violence, or intimidation, or threat of force or violence, or otherwise, with the entrance to or egress from said plant, office and place of business of plaintiff's officers, employees and members of the public; (c) stationing, maintaining or allowing to remain in front of each of the two entrance and exit gates of the plaintiff more than twelve pickets at any one time, said pickets to be in motion and to be spaced a distance of at least ten feet apart in a single line so as not to block ingress or egress of pedestrians or vehicles to and from said premises.